BARRY J. PORTMAN
Federal Public Defender
NED SMOCK
Assistant Federal Public Defender
555 - 12th Street, Suite 650
Oakland, CA 94607
Telephone: (510) 637-3500

Attorney for Defendant
GRANT LEWIS ROGERS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-S-07-0413 JCS |
| Plaintiff, | ) ) ) | DEFENDANT'S SENTENCING |
| v. | ) ) | MEMORANDUM |
| GRANT LEWIS ROGERS, | ) ) ) | Date: August 1, 2008 |
| | ) ) | Time: 10:30 a.m. Judge: Hon. Joseph C. Spero |
| Defendant. | ) | |

**I.   Introduction**

Grant Rogers will be before the Court for judgment and sentencing on Friday, August 1, 2008. Both the United States and the defense recommend a sentence of two years probation. United States Probation concurs, but also recommends six months of home detention with electronic monitoring based upon a finding of an adjusted offense level of 10, as opposed to the adjusted offense level of 6 set forth in the plea agreement. Upon further review, both parties now agree that the Guidelines calculations proposed by the probation officer are correct. However, the joint sentencing recommendation remains unchanged.

After *United States v. Booker*, 125 S.Ct. 738 (2005), the Sentencing Guidelines are advisory. Courts must consider those Guidelines, but may tailor a sentence in light of other statutory concerns, as well. As will be explained in more detail below, the sentence that was agreed upon by the parties is appropriate in light of the considerations set forth in 18 U.S.C. § 3553(a), whether the total adjusted

offense level under the advisory guidelines is six or ten.

**II.     Two Years of Probation is Sufficient, but Not Greater Than Necessary to Comply With the Purposes Set Forth in 18 U.S.C. § 3553(a).**

Post-*Booker*, this Court is obliged to calculate the sentencing range prescribed by the Guidelines, but must also reach a decision about the appropriate sentence based upon the factors enumerated in 18 U.S.C. § 3553(a). *United States v. Cantrell*, 433 F.3d 1269, 1279-80 (9th Cir. 2006). A sentencing court is not to presume that the Guideline range is reasonable, but is instead required to make an individualized assessment using the § 3553(a) factors as a guide. *United States v. Gall*, 128 S.Ct. 586, 596-596 (2007). Those factors support the conclusion of the parties that a sentence of two years probation is sufficient, but not greater than necessary, to punish Mr. Rogers' conduct. What follows is an overview of the relevant § 3553(a) factors and why they suggest that the agreed-upon sentence is reasonable and appropriate.

   **a.  Nature and Circumstances of the Offense and History and Characteristics of Mr. Rogers**

Mr. Rogers was a model high school student who did not even drink, in part due to his active participation in church groups and athletics. He focused most on motocross. His plan after high school graduation was to attend College of the Redwoods, where he had been accepted. However, his plans to go to college were derailed the summer after his graduation when he was in a severe motorcycle accident during a race. Mr. Rogers broke four vertebrae and lacerated his bladder. He was in a full body brace for nine months and was unable to walk without assistance for three months after that. As Mr. Rogers explains in his letter to the Court, physical therapy became his full time job. Because he was so focused on recovery, going directly to college as planned became impossible.

Mr. Rogers was not insured at the time, so medical bills began to pile up. As soon as he could walk again, Mr. Rogers began searching for a job to generate income. After a stint at a recreation center, he took the postal exam and was hired in October 2004 as a casual carrier with the Postal Service. The main appeal of the job was that after two years he would become a full-time employee with benefits. But the job of carrying mail on his back was extremely taxing - Mr. Rogers took hours to recover every night. The pain Mr. Rogers has suffered as a result of his injuries has been debilitating and he required repeated surgeries. He has undergone seven surgical procedures related to his recovery from his injury. Ultimately,

Mr. Rogers was transferred to a job working nights sorting mail.

Sorting packages and getting home late at night left Mr. Rogers in even more pain, so his doctor prescribed him increasing doses of the narcotic methadone. Methadone is a synthetic opioid used medically mainly as a pain killer and a maintenance for patients who suffer from heroin addiction. Although chemically unlike morphine or heroin, methadone also acts on the opiod receptors and thus produces many of the same effects. His doctors prescribed strong narcotic painkillers because he could not get through the day without them. After some time, Mr. Rogers became addicted to this prescribed pain medication. Addiction to prescribed methadone and morphine is a common problem, and withdrawal from methadone is known to cause symptoms including nausea, vomiting, tremors, and fever. *Public Health Issue: Methadone Maintenance Therapy*, Richard Sadovsky, M.D. West J. Med. January 2000; 172:42-6.

Mr. Rogers and his wife had their daughter Emma on September 16, 2006. Photographs of Mr. Rogers and his family are attached hereto at Exhibit A. Soon after that, he had another surgery. His wife was not working because she was home caring for the baby. Mr. Rogers became more and more overwhelmed with the bills associated with their new child, his own hospital bills, and his worsening dependence on the methadone that had been prescribed to him.

It was this combination of financial distress and drug addiction that caused Mr. Rogers to resort to conduct he never would have otherwise contemplated. Once in the grip of that addiction, Mr. Rogers stole medication including methadone and morphine in the mail, and also stole money to pay for more medication, his doctor visits, and his surgery bills. This conduct was completely out of character for Mr. Rogers. The aberrant nature of the conduct reflects the fact that his judgment was clouded by his desperation both to obtain the narcotics to which he was addicted and to support his young family. Mr. Rogers explains in his letter that "I was so overcome with the grip of the medication; every waking hour caused me to dwell about how I was going to get my next 'fix'." When questioned by postal inspectors, he fully admitted his conduct.

After his arrest, Mr. Rogers took the initiative to turn his life back in the right direction. He voluntarily checked himself in to the Mountain Vista Farm residential drug treatment program and

completed 35 days there. Given that he was a person who never even drank alcohol, it was difficult to come to terms with the fact that he had become dependent upon the pain killers he was taking. Nevertheless, Mr. Rogers went into the program on his own initiative in an effort to address the cause of his actions. A letter from the program is attached hereto at Exhibit B. After he completed the program, Mr. Rogers began attending weekly Narcotics Anonymous meetings. He has now commenced a program at the Eureka Community Health Center wherein he receives the non-narcotic pain-killer Suboxone. Suboxone is a substitute for methadone, so Mr. Rogers is no longer using methadone. This is a very positive step for Mr. Rogers given the difficulty methadone users typically have weaning themselves from the drug. The program includes weekly meetings and urinalysis.

Mr. Rogers also found a new job so that he can support his family. He is now working as a broadband technician for Suddenlink. His job involves installing and maintaining broadband service for the company. He values the job immensely and enjoys going to work on a daily basis now that he is drug free and stable.

  **b. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

As a result of his conduct in this case, Mr. Rogers lost his job with the Postal Service and now has a criminal record. Mr. Rogers explains in his letter the powerful impact this case has had on his life: "I felt I had disgraced our family's name. I watched my mother and father cry as I told them... my heart broke. It was at that moment I felt the true meaning of being ashamed." Mr. Rogers writes: "I took an oath when I was as a Postal employee and I disgraced the Postal Service and all of their customers, and that fact alone makes me feel absolutely horrible about what I did." This is not an individual who has no conception of the seriousness of his actions. He has accepted responsibility and devoted himself to resolving the issues that led to his conduct. Being supervised by a probation officer will assure that he continues down this path.

  **c. Need to Provide Adequate Deterrence and Protect the Public**

Aside from traffic tickets, Mr. Rogers has absolutely no criminal history. He has a lengthy employment history and is happily married to a woman he has known since she was 13. They have a

young daughter, Emma. This conviction resulted from aberrant conduct. As set forth above, Mr. Rogers is a transformed man since the time of his arrest. He has conquered his addiction, is working full time, and is focused on providing for his family. Mr. Rogers has proved through his own conduct that he will never again involve himself in criminal activity. A sentence other than probation at this point would have no additional deterrent value.

### d. The Kinds of Sentences Available

Presumably because the advisory guideline calculations adopted by United States Probation result in a Zone B guideline range of 6-12 months, Probation recommends that Mr. Rogers be required to serve six months of home detention with electronic monitoring. As a result of his conduct, Mr. Rogers lost his job, now has a criminal record, and has been humiliated in the eyes of his community and his family. He will be closely supervised by a probation officer for two years and any further misconduct on his part will be dealt with by this Court. United States Probation is recommending 100 hours of community service, restitution, and a fine. Six months of home detention on top of these conditions is overly harsh and serves no additional purpose.

Mr. Rogers is justifiably concerned about possible negative ramifications at work if he is placed on home detention with electronic monitoring. Mr. Rogers works for a cable company and he is frequently on call to come in to work to deal with outages or other service problems. While he goes through some periods during which he works normal hours, he is frequently called in to work with no notice at any time of the day or night. His concern is that these calls are time sensitive. He will not be able to obtain approval from his probation officer if, for example, he receives a call at 1:00 a.m. on a Saturday night requiring him to report to work immediately to repair an outage.

Mr. Rogers is also concerned that he may lose his job if his probation officer contacts his employer because there is constant turnover at the job. He has little confidence that his employer will be flexible since they have fired co-workers for reasons he perceives to be very minor. Another concern about electronic monitoring is that one of Mr. Rogers' main job requirements is climbing telephone polls. To do so, Mr. Rogers must wear climbing spikes on his feet that are fastened with heavy straps to his ankles. He is concerned that a monitoring bracelet on his ankle might interfere with these spikes. Of course, should

the Court order electronic monitoring, Mr. Rogers will work with his probation officer to seek some solution to this problem.

The conditions recommended by United States Probation in addition to home confinement mean Mr. Rogers will face meaningful consequences for his conduct beyond those he has already been confronted with. United States Probation has recommended that Mr. Rogers perform 100 hours of community service during his term of probation. Mr. Rogers agrees that community service is an appropriate sanction and will complete it on off-days from work. As he states in his letter to the Court, "I am looking forward to bettering myself and to make up for the wrongs I've done to the community. I want to make my family and community proud - and am looking forward to doing so." For a young father supporting his wife and daughter this will require real sacrifice. Any time away from work is time he would like to be spending with his family. United States Probation is also recommending restitution and a fine of $2,000. Mr. Rogers and his wife are living paycheck to paycheck, so these financial obligations will not be easy to meet. Mr. Rogers will need to cut the family's living expenses to a bare minimum to make payments.

In sum, Mr. Rogers concurs in large part with the recommendations of the probation officer. He recognizes that his conduct must have real consequences, and he will spend the next two years being closely supervised, performing community service, paying restitution and fines, and being drug tested. Of course, his criminal record is a lifetime burden. He asks only that the Court not also impose six months of home detention as a condition of his two years of probation.

//

//

//

//

//

**III.     Conclusion**

This Court should follow the recommendation of the parties and sentence Mr. Rogers to two years of probation. Such a sentence is both consistent with the terms of the negotiated plea agreement and is supported by the factors in § 3553(a). Mr. Rogers thanks the Court for considering this memorandum.


                                                            Respectfully submitted,

                                                            BARRY J. PORTMAN
                                                            Federal Public Defender


Dated: July 25, 2008                                         /s/ Ned Smock
                                                            Ned Smock
                                                            Assistant Federal Public Defender
                                                            Attorney for Defendant
                                                            GRANT LEWIS ROGERS